[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, a building contractor, brings this action in three (3) counts. The first count alleges that the defendants are in breach of contract for failing to pay for goods and services supplied pursuant to a contract between the parties. The second count seeks recovery under a theory of quantum meruit and the third count is based on unjust enrichment.
By way of special defenses, the defendants claim it was the plaintiff who is in breach of contract by abandoning construction and failing to take adequate protective measures to prevent damage to a partially constructed house; by poor construction workmanship, by failing to comply with contract specifications and they claim the plaintiff was fully paid for the work performed.
The defendants have filed a counterclaim based on allegations of breach of contract and breach of warranty.
From the testimony and other evidence presented during the trial of this case, the Court makes the following findings and awards of damages:
In 1987, the Gormans acquired a building lot on Satari Drive in the town of Coventry. They obtained mail order plans for a house to be built thereon and set about obtaining builders' estimates for its construction.
On April 12, 1987, the Gormans entered into a written agreement (Agreement to Build) (See Plaintiff's exhibits 3 and 4) with the plaintiff company through its president Stephen F. Good. The contract called for the house to be built for $126,800.00, payable in four (4) installments. The terms of the contract provided for the work to be done in a good workmanlike manner — so as to provide a high quality finished home. It also contained a clause entitling the prevailing party in a legal action for breach of contract to reasonable attorney's fees and costs.
Although the contract had no specific provision with CT Page 4782 respect to starting or completion dates, the parties understood that construction would commence when a road was installed to the property. (The road was to be installed by a third party not involved in this case). The plaintiff was able to start the foundation work in October, 1987, which was within a reasonable time following the completion of the road.
The contract (paragraph 2B) contemplated that the site work (septic system, curtin drains, excavation etc.) might be the responsibility of the purchaser-defendants at their option. Mr. Good told the Gormans he estimated the cost of the site work using his regular sub-contractor would likely be in the range of $25,000.00 to $30,000.00. The Gormans shopped around for a better price and obtained a proposal from Action Excavating for $19,000.00. They showed the proposal to Mr. Good for his approval. Mr. Good reviewed it and found it to be, in his opinion, satisfactory. Mr. Good signed the proposal, probably imprudently, and Mr. Gorman signed it as well. It was, however, Mr. Gorman who hired Action Excavating to do the site work and the Gormans were to pay for the cost of the site work over and above the contract price of $126,800.00. Thus, the defendants understood and accepted the responsibility of hiring Action Excavating and payment for the work done by that firm. The defendants also hired an engineer to stake the location of the house on the site.
The water table on the lot was high and when the foundation hole was dug it flooded, making it necessary to pump the water out before the foundation could be installed.
Even though the plaintiff was not responsible for the site work, he should not have installed a foundation if he had reason to believe or expect that the basement water compromised the integrity of the work he was doing. Eventually additional drainage was needed to correct the problem, but even after the foundation was installed water in the basement continued to be a problem and between mid-December to mid-January the water froze causing a support beam to heave and throw the house off level. Later corrective work was required. Despite the water problem, the plaintiff did install the foundation and hired a framing crew to frame the house, Various materials needed for the construction were delivered to the site and the framing work CT Page 4783 commenced. Sometime in mid-December 1987, the framing crew left the job to return to Texas and little, if any, work was done by the plaintiff thereafter.
On or about January 18, 1988, Mr. Gorman called Mr. Good. He (Gorman) was very upset with the quality of the work being done or not being done. The house was partially framed, but window, door and skylight openings had been left uncovered and exposed to the elements, as were areas in which framing had not been completed. The uncovered openings had resulted in an accumulation of ice and snow on both living levels, with some damages to the framing as a result. Water in the basement (most but not all of which was due to the seepage problem discussed earlier) had frozen causing a heaving of a support beam and distortion of the structure of the house itself. This was a substantial and material structural defect.
The Court concludes that the plaintiff was remiss in proceeding with the foundation while the water problem was unresolved and remiss in leaving the house exposed to the elements for approximately one month in the winter season. The resulting distortion of a support beam is a major defect and the Court determines the plaintiff had not performed his work in a good workmanlike manner, thus the plaintiff was in breach of contract.
Having determined that the parties entered into an express contract which was breached by the plaintiff, the defendants are entitled to damages under the counterclaim, that is any additional costs to complete the construction in accordance with the original contract.
The cost to the defendants is computed as follows:
1. Amount paid to the plaintiff. $14,440.50 (The plaintiff was paid $19,268.00) however, $3,868.00 of that sum was paid to Action Excavating at defendants' request and is not part of the contract completion and $959.50 was to reimburse plaintiff for the building permit fee.
2. Items as shown on defendants' exhibit CT Page 4784 HH, as follows:
 Item Q 2,475.00 Item R 2,150.00 Item S (This is attributable to 1,600.00 corrective work, although disputed by the plaintiff) Item T 1,000.00 Item U 1,155.00 Item V (Costs allowed to repair 4,162.00 foundation work $1700.00 plus $2462.00, as shown on Plaintiff's exhibit 16) Item W 13,470.00 Item X 6,983.00 Item Y 6,800.00 Item Z 1,600.00 Item AA 1,650.00 Item BB 8,186.00 Item CC less 550.00 agreed as 2,715.00 overcharge Item DD 5,116.00 Item EE — disallowed — deck is not part — of original contract Item — Adam Gorman work allowance — 3,000.00 (There was no credible evidence that the defendant's work had a value of $15.00 per hour. It is a figure determined by the defendant as fair but without evidence that he had any special building skills, the Court finds that, while the hours claimed appears reasonable, compensation at $6.00 per hour is appropriate Item FF 3,191.00 ----------- Sub Total $79,693.50 Construction Allowances 27,500.00 (Per exhibit HH) Materials Used 18,640.00 ----------- (Plaintiff's exhibits GG1-GG11) Total cost to complete. $125,833.50
CT Page 4785
The terms of the contract provide for counsel fees to the prevailing party in the event of suit for breach. The difference between the contract price and the cost to complete the contract is $966.50, in savings to the defendants. Under the peculiar circumstances of this case, where the plaintiff, while not liable for any additional damages resulting from his breach, primarily because the defendants paid him relatively little for the work he had done, should not be assessed counsel fees beyond the amount of the credit he would be entitled under a theory of unjust enrichment. Using its discretion as to counsel fees, the Court will assess them at $966.50, as an offset against the amount which the plaintiff would otherwise be awarded under the third count of his complaint (unjust enrichment).
The second count claiming recovery under quantum meruit is not applicable in light of the decision finding breach of an expressed contract with damages computed as a result of that finding. This is not a situation where the plaintiff may recover on the basis that his part of the contract was substantially performed and that his breach was slight. Kelly v. Hance, 108 Conn. 186 (1920), Rita v. Maple Diner, Inc., 10 Conn. Sup. 125 (1941).
Accordingly, judgment shall enter for the defendants on the first count. Counsel fees are awarded to the defendants on the counterclaim of $966.50. Judgment for the plaintiff on the third count of unjust enrichment in the amount of $966.50.
Costs are not taxed to either party.
BY THE COURT,
Lawrence C. Klaczak Judge, Superior Court